# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| KENNETH REED, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Case No. 07 C 2321 |
| v. | ) |
| | ) Judge Joan B. Gottschall |
| THE PRUDENTIAL INSURANCE | ) |
| COMPANY OF AMERICA, | ) Magistrate Judge Martin C. Ashman |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Kenneth Reed ("Reed") and defendant The Prudential Insurance Company of America ("Prudential") have filed cross-motions for summary judgment with respect to Reed's suit filed pursuant to Section 502(a)(1)(B) ("§ 502") of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B). Both parties' motions seek summary judgment pursuant to Federal Rule of Civil Procedure 56(c) or, alternatively, pursuant to Federal Rule of Civil Procedure 52(a). For the reasons set forth below, both parties' cross-motions for summary judgment are denied.

### I. BACKGROUND

Kenneth Reed, a 49 year old white male, was employed by Dynergy, Inc. ("Dynergy") as a shift technician until September 9, 2005 (or September 16, the parties disagree on the precise date), when he ceased working, complaining of fibromyalgia, osteoarthritis, chronic fatigue, and depression. At the time he ceased working, Dynergy maintained short-term and long-term disability income protection under a benefits plan

(the "Plan") that was fully insured by Prudential. The parties do not dispute that Reed qualified as a "participant" under the terms of the Plan.

The portion of the Plan relevant to total disability benefits states in part:

You are disabled when Prudential determines that:

- you are unable to perform the material and substantial duties of your regular occupation due to your sickness or injury; and

- you have a 20% or more loss in your ***indexed monthly earnings*** due to that ***sickness*** or ***injury***.

After 24 months of payments, you are disabled when Prudential determines that due to the same sickness or injury, you are unable to perform the duties of any ***gainful occupation*** for which you are reasonably fitted by education, training or experience.
…

We may require you to be examined by doctors, other medical practitioners or vocational experts of our choice. Prudential will pay for these examinations. We can require examinations as often as it is reasonable to do so. We may also require you to be interviewed by an authorized Prudential Representative.

(emphases in original). The parties dispute whether Reed received short-term disability payments after he left Dynergy until March 1, 2006: Reed maintains that he did, whereas Prudential maintains that he instead received salary continuance from Dynergy through that interval. Neither party disputes that Reed also applied to Dynergy for long-term disability ("LTD") benefits, claiming "severe fibromyalgia with chronic pain in joints and depression." Reed's application was duly forwarded to Prudential, which reviewed his application and medical records. Reed was also interviewed via telephone by Prudential agent Will Truesdale.

Prudential ultimately denied Reed's claim for LTD benefits. Reed appealed Prudential's denial, submitting further medical records, and Prudential referred the file

for a three-day surreptitious surveillance and activity check; the surveillance was conducted on May 1-3, 2006.  On June 21, 2006, Prudential also referred Reed's entire application for external review by both a rheumatologist and a psychiatrist (neither of whom conducted a personal examination of Reed).  After receiving their evaluation of Reed's medical records, Prudential denied Reed's appeal on July 17, 2006.

On January 12, 2007, Reed filed a second appeal for reconsideration of Prudential's denial of LTD benefits, including additional medical data.  Prudential forwarded Reed's file to the same reviewing rheumatologist and psychiatrist who had conducted the prior review of Reed's first appeal.  Both physicians filed addenda to their previous reports, and following Reed's submission of additional records on February 15, 2007, the reviewing physicians filed additional comments on Reed's application.  Prudential forwarded the reviewing physician's reports to Reed, who submitted a response without filing any additional medical records.  This response was forwarded to the reviewing physicians for comment and, upon receiving their comments; Prudential upheld its prior decisions to deny LTD benefits to Reed, so informing him on March 30, 2007.  Reed subsequently filed the instant suit in this court on April 26, 2007.

## II. ANALYSIS

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  In determining whether there is a genuine issue of fact, the court "must construe the facts and draw all reasonable inferences in the light most favorable to the nonmoving party." *Foley v. City of*

*Lafayette,* 359 F.3d 925, 928 (7th Cir. 2004). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

The Seventh Circuit has held that when cross-motions for summary judgment are filed, the district court should look to the burden of proof that each party would bear on an issue at trial and then require that party go beyond the pleadings and affirmatively establish a genuine issue of material fact. *Santaella v. Metropolitan Life Ins. Co.*, 123 F.3d 456, 461 (7th Cir.1997). Furthermore, for claims seeking benefits under an ERISA plan, the Seventh Circuit has held that at trial the plaintiff bears the burden of proving the ERISA beneficiary's entitlement to the benefits of the insurance coverage, and the defendant bears the burden of establishing the beneficiary's lack of entitlement." *Id.*

Both sides concur that the proper standard of review in this case is *de novo*, as articulated by the Seventh Circuit in *Diaz v. Prudential Ins. Co. of America*:

> The district court's task in engaging in *de novo* consideration of the decision of the plan administrator is not the same as its job in reviewing administrative determinations on the basis of the record the agency compiled under the substantial evidence rule, as it might do in a Social Security benefits case. … In fact, in these cases the district courts are not *reviewing* anything; they are making an independent decision about the employee's entitlement to benefits. … [W]hen *de novo* consideration is appropriate in an ERISA case … the court can and must come to an independent decision on both the legal and factual issues that form the basis of the claim. … That means that the question before the district court … was the ultimate question whether [the plaintiff] was entitled to the benefits he sought under the plan.

4

499 F.3d 640 (7th Cir. 2007) (internal citations omitted).

It is evident that there exists at the heart of this case a genuine issue for trial; *viz.*, whether Reed's condition constitutes a disability qualifying for LTD benefits under the Plan. Reed has submitted medical records from his rheumatologists, Drs. Timothy Lenardo, M.D. ("Lenardo") and John McCormick, M.D. ("McCormick") confirming their diagnosis of fibromyalgia and severe sleep apnea of both the central and obstructive varieties. Lenardo also furnished a detailed explanation of why Reed could not perform his occupational duties at Dynergy and detailing his uncertainty as to whether Reed could return to work in the future. App'x Vol. II PRU 355. Specifically, Lenardo describes:

> [Reed's] underlying musculoskeletal conditions which produce severe fatigue, non-restorative sleep, difficulty concentrating and focusing on multi-tasking activities as well as stiffness in the joints, diffuse myalgias in the neck, shoulders and lower back accompanied by stiffness and inactivity gelling in the knees. [Reed's] underlying musculoskeletal conditions render him unable to perform sustained walking for longer than five minutes, repetitive ascending or descending of stairs, lifting of any greater than 30 lbs. on a regular repetitive basis, squatting, kneeling, crouching, crawling or stooping.
> …
> Currently [Reed] is unable to perform his usual activities of his occupation at the power plant. It is uncertain when, if ever, he will be able to return to work as his conditions are chronic and thus far have proven resistant to even aggressive pharmacotherapeutic interventions.

*Id.* Furthermore, Reed has submitted a Fibromyalgia Residual Functional Capacity Questionnaire ("FRFCQ") completed by Lenardo, stating that Reed's pain or other symptoms were severe enough to constantly interfere with attention and concentration needed to perform even simple work tasks, and that Reed was incapable of even "low stress" jobs.

Reed has also submitted a "FRFCQ" completed by pain specialist Dr. Kathleen Stienstra, M.D. ("Stienstra"), who reported that Reed displayed symptoms of multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, subjective swelling, irritable bowel syndrome, temporomandibular joint dysfunction, and chronic fatigue syndrome. App'x Vol. II PRU 271. Stienstra also assessed that Reed's pain or other symptoms were severe enough to interfere with attention and concentration needed to perform even simple work tasks either frequently or constantly. App'x Vol. II PRU 272. Stienstra concluded that Reed would be incapable of tolerating even "low stress" jobs, but would perhaps be capable of such jobs in the future. App'x Vol. II PRU 273.

Furthermore, Reed also submitted a report by psychologist Dr. James L. Mason, Ph.D. ("Mason"), who reported that Reed was "hypersensitive to touch and pain," and concluded that Reed's "[p]resentation and report suggested the presence of Pain Disorder associated with both Psychological Factors and a General Medical Condition." App'x Vol. II PRU 394.

Prudential has submitted analyses of Reed's condition by document review of Reed's file (including the above reports) performed by rheumatologist Dr. Paul Howard, M.D. ("Howard"), and psychiatrist Kelly Clark, M.D. ("Clark"). Howard reported that "Reed's self-reported functional capacity is not consistent with the activities noted in the … medical documentation" and that "Reed's self-reported pain symptoms are not supported nor are they consistent with any physical examination findings or any available diagnostic testing." App'x Vol. II PRU 331-32. Howard ultimately confirmed the repeated diagnoses of Reed's fibromyalgia, but concluded that:

> [T]he absence of motor weakness, motor atrophy, loss of muscular coordination, abnormalities in gait … result in no significant physical

> impairment in terms of range of motion, motor strength, his ability to walk, lift, carry, or repetitive use of hands or feet. Consistently during the time frame in question, the medical records fail to reveal any findings consistent with impairment that would result in any restrictions on physical activities.

App'x Vol. II PRU 333.

In her separate report, Clark concluded that examination of Reed's records revealed no "significant mental illness, including cognitive disturbance, psychosis, behavioral dyscontrol, dangerousness, or other clinical issues which may have limited his functioning" and suggested that his reported fatigue was an adverse side effect of his medications. App'x Vol. II PRU 342, 340. Finally, Clark concluded, "[T]he signs and symptoms documented [d]o not indicate the presence of psychiatric limitations." App'x Vol. II PRU 342.

Lenardo responded to Howard's and Clarks' reports, disagreeing with their conclusions. App'x Vol. II PRU 253-55. Lenardo took issue with Howard's conclusion that the fibromyalgia could not be posing a significant impairment to Reed's ability to function on the job. *Id.* at 255. Lenardo observed that the pain and fatigue, two conditions that are extremely difficult to measure, are the critical components that are responsible for Reed's inability to maintain gainful employment. *Id.* Reed noted that Howard based 'much of his evaluation of impairment on more neurologic findings and it is not clear that this takes into account the full extent of the symptomology and affects [sic] upon [Reed's] functional status." *Id.* Lenardo also questioned Clark's findings, noting that "from a cognitive standpoint, [Reed] had complained on multiple occasions of having difficulty maintaining attention and concentration." *Id.* at 253. Lenardo argued that the fatigue and [e]ffects of the sleep apnea and fibromyalgia would reasonably be

7

expected to create difficulties with [Reed's] swing shift work and any overtime requirements made by his employer." *Id.* Lenardo continued, "[Reed's] obstructive sleep apnea and fatigue issues and fibromyalgia would play a role in producing restrictions to his physical activities and working timing demands." *Id.*

Howard and Clark participated in the review of Reed's second appeal, and confirmed their prior conclusions, despite additional submissions from Lenardo and Stienstra contesting their findings.

Prudential argues that a diagnosis of fibromyalgia, by itself, is not disabling. *Sarchet v. Chater*, 78 F.3d 305 (7th Cir. 1996); *Estok v. Apfel*, 152 F.3d 636, 640 (7th Cir. 1998); *Tennant v. Apfel*, 224 F.3d 869 (8th Cir. 2000). However, Reed points to *Hawkins v. First Union Corporation Long-Term Disability Plan*, 326 F.3d 914, 919 (7th Cir. 2003) and *Chronister v. Baptist Health*, 442 F.3d 648, 656 (8th Cir. 2006), in both of which the courts overturned denial of benefits based upon a diagnosis of fibromyalgia. Therefore, fibromyalgia, despite the elusive nature of its etiology, may, if severe enough, sufficiently impair an individual so as to constitute a qualifying disability.

Given the contradictory nature of the physicians' findings and conclusions, the court finds that there exists a genuine issue of material fact; *viz.*, whether Reed's condition constitutes a disability as defined under the Plan that would qualify him for LTD benefits. Because there is a genuine issue of material fact, summary judgment pursuant to Federal Rule of Civil Procedure 56(c) is precluded for both parties' cross-motions.

Both parties have also asked the court to consider alternatively granting judgment on their motions via a "trial on the papers," pursuant to Federal Rule of Civil Procedure

52(a). *See, e.g., Young v. Verizon's Bell Atlantic Cash Balance Plan*, No. 05 C 7314, 2008 WL 4066517, at *7 (N.D. Ill. Aug 28, 2008); *see also Crespo v. Unum Life Ins. Co. of America*, 294 F. Supp. 2d 980, 991-92 (N.D. Ill. 2003) (recommending that parties involved in cases reviewing ERISA benefit claims should consider a trial on the papers rather than filing cross-motions for summary judgment); Morton Denlow, *Trial on the Papers: An Alternative to Cross-Motions for Summary Judgment*, FED. LAW., Aug. 1999, at 30 (analyzing the advantages and disadvantages of utilizing a trial on the papers as an alternative to cross-motions for summary judgment). Both parties have stipulated to the admissibility of the contents of the record.

If this court were reviewing the case under the "arbitrary and capricious" standard that is required when the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan, the court would perhaps be inclined to conduct a "trial on the papers." *See Diaz v. Prudential Ins. Co. of America*, 424 F.3d 635, 636-377 (7th Cir. 2005). However, because the court is required to conduct a *de novo* review of the case, the court declines to grant judgment for either party pursuant to Rule 52(a). This case presents issues of material fact that are contested by the parties' "dueling witnesses." The relative credibility of the parties' respective witnesses is an important issue in this case, and that relative credibility is best resolved by an in-court hearing. *See* Morton Denlow, *Trial on the Papers: An Alternative to Cross-Motions for Summary Judgment*, FED. LAW., Aug. 1999 ("In those cases in which credibility determinations are at the heart of the case, the waiver of the right to bring in witnesses does not make sense."). The court therefore

9

denies both parties' cross-motions for summary judgment pursuant to Federal Rules of Civil Procedure 56(c) and 52(a).

## III. CONCLUSION

For the reasons set forth above, Reed's and Prudential's cross-motions for summary judgment are denied.

ENTER:

/s/
JOAN B. GOTTSCHALL
United States District Judge

DATED: September 10, 2008